We will hear arguments in Case No. 20-1596 and related cases, Arris Solutions against Realtime Adaptive Streaming. Mr. Cordell, you may begin whenever you're ready. Thank you, Your Honor. May it please the Court, Ruffin Cordell for the DISH appellants. The Supreme Court in Thrive held that the IPR process consists of two distinct phases. The institution phase followed by a, quote, thoroughgoing determination of a patent's validity. The statute also tells us an institution carries two critical characteristics. It is final and unappealable. Thrive tells us what unappealable means, but this is the first opportunity for the Court to confront what final actually means. Now, the statute also tells us that the institution phase is cabined in two particular ways. First, it tells us what issues are to be considered at the institution phase. But importantly, the statute limits the time for the institution phase. Section 314B clearly limits the institution phase to three months following the patent owner's preliminary response, or POPR, or the time therefore. The rules permit a two-week reconsideration period, and that rule was the subject of actual rulemaking by the agency. It was published, it was commented upon, and it was implemented. That sets forth the time period for the institution phase. Thrive then tells us that once the institution phase is complete, that we are to move on, that it is in the rearview mirror, if you will, and we need to proceed with the thoroughgoing process and reach a final determination about the patent's validity. And that's exactly what happened in this case. The Board made a decision about institutions, considered all of the arguments and evidence presented by the parties with respect to the institution issues, and decided to institute the IPR. The parties then engaged in the process that late Justice Ginsburg describes in the Thrive opinion, where evidence was adduced and resources were expended, and the agency committed significant time and effort to resolution the patent's validity. And then just days before the final written decision was to emerge, we are told that the agency is now reconsidering its institution decision and reversing it. The ills that come from this kind of process are profound. If you think about it, if the Board wanted to, it could ensure that no appellate review of any decision upholding a patent's validity ever occurs. Because as the thoroughgoing process proceeds, if the Board were to decide that a patent's validity should be upheld, it could avoid a final written decision and simply reconsider its institution decision. Obviously, that is not the kind of result that we want as a bar, as a patent system, as a court, or as a society. Those would have different legal consequences as a result of the estoppel provisions, right? They would, Your Honor. That's an excellent point. However, again, the resource commitment that Congress talked about in the IPR process would be wasted. Justice Ginsburg's opinion does a really good job of elucidating exactly the goals of the IPR process. And the estoppel is a price to be paid by the challenger, if you will, but one that, assumedly, they had rationalized at the outset before choosing to file the case. The finality of the IPR decision is one that prior decisions of this Court have yet to confront. So it is true that there are decisions, such as the Medtronic decision, where the Board was, I don't know about permitted, but the Board did go back and reconsider its institution decision. And we see that in several cases. However, in none of those did the appellant confront or really present to the Court this issue about the finality of the institution phase and the idea that when Congress said final and unappealable, those are two distinct characteristics. And the finality of that decision binds not only all of us in the appeals process, as Justice Ginsburg made clear, but also binds the Board, that once the Board makes that decision on institution, it is to proceed to the thoroughgoing process resulting in a final written decision. SAS made that very clear as well. That the idea here is that once institution is decided by the Board, that the next step in the process is that thoroughgoing evaluation resulting in a final written decision. Mr. Cordell, this is Judge Shen. I guess you're saying that even if during the pendency of an IPR proceeding, the Patent Board were to discover that the petitioner had lied about something in the contents of its petition, and the Board had relied on that fraud, that lie in the petition, the Board would have no power, discretion, authority to revisit the institution decision during the pendency of the proceeding. Is that right? Thank you. I think the answer is yes. That, in fact, the Supreme Court tells us that despite whatever ills occurred in the institution phase, that that is behind us, and we are to proceed to a final written decision. It's a runaway train to the final written decision. I think that's right. I think that, you know, I can imagine that the Board may find different ways to deal with that situation, but what they can't do is to point back to institution and simply undo what was done. And in this case, it actually has several profound effects. ARIS has waived its oral argument here, but the joinder of ARIS was undermined by the Board because they said that, well, essentially, this never should have been instituted in the first place. And even though the joinder statute tells us that we are not to consider time bar issues, we're going to undo the ARIS joinder simply because we're going to get into a time machine and go back and undo the institution decision. There's really no support for that anywhere. There's no support in the case law. There's no support in the statute. And yet, that's exactly what was done. What's your best quotable quote from the Thrive decision that you think we should focus on and should inform us that there's no looking back after the institution decision is made, and even if the institution decision was premised on a completely incorrect understanding of the facts as they existed at that time or a complete misunderstanding of the law, the Patent Board nevertheless is without authority to revisit that and has to go all the way to final judgment regardless? I would point to the late Justice Ginsburg's opinion, and I'm looking for the, I guess it said 1374, where she discusses the merits of allowing any appeal of a 13B determination. And she says allowing 13B appeals would tug against that objective, the objective being Congress' intent to weed out bad patents. And she specifically talks about wasting the resources spent resolving patentability and leaving bad patents unenforceable. And she specifically says a successful 13B appeal would terminate in vacatur of the agency's decision. In lieu of enabling judicial review of patentability, vacatur would unwind the agency's merits decision. So she clearly is focused on the idea that once we've made the decision to institute, we are in the thoroughgoing process and we need to see that through. She treats it as a gating issue, and once that gating issue is surpassed, that we are to proceed all the way through. I'm looking, Your Honor, back to the opinion. I also am drawn to the quote at 1376, where she discusses whether or not there can be review of the thoroughgoing process. And she specifically points back to Cuso and says that the Supreme Court's decision in Cuso explained that, quote, nothing in 314D or Cuso withdraws our power to ensure that an interparty's review proceeds in accordance with the law's demands. And then she says that reviewability holding is inapplicable here for quick-to-call appeal challenges, not the manner in which the agency's review proceeds once instituted, but whether the agency should have instituted review at all. So she is clearly distinguishing the institution decision from how the IPR proceeds. Mr. Cordell, you're into your rebuttal time now. If my colleagues have no further questions at the moment, why don't you save the remaining time for rebuttal? I will. Thank you, Your Honor. And Mr. Wang? Good morning, Your Honors. And may it please the Court, Philip Wang for FLE Real Time. During my friend's argument, I don't think I heard any dispute about the Board's termination order not being a decision to not institute. And it clearly is a decision not to institute for several reasons. The Board's order repeatedly says that it's reconsidering its decision to institute and then deciding not to institute. The entire basis of the Board's order was about applying the Section 315B time bar, which is the exact issue that was discussed before institution in the papers there. And the Board found that all petitioners were time barred under Section 315B and decided not to institute. And because of that fact, because the Board's order was a decision to not institute, this Court's holdings in GTNX, Medtronic, and BioDelivery confirm that there's no jurisdiction to hear this appeal. Mr. Wang, this is Judge Stoll. What about the alternative petition for writ of mandamus? Do you agree that we have jurisdiction to consider that? I mean, the burden is very high, but we have jurisdiction to consider it, right? Thank you, Judge Stoll. I think that question was discussed at length at the recent Milan oral argument, and I agree with what the parties seem to agree in that argument, which this Court would have jurisdiction to decide the mandamus question. I think that this is a very poor case of mandamus relief. Okay. Thank you. Why is it a poor case for mandamus relief? I guess I'd question generally, but part of it would be Mr. Cordell's reference to, as I understood it, and I may have misunderstood it, regulatory time limits on reconsidering institution. It would be a poor vehicle, Your Honor, because I think the exact issue was addressed in the GTNX case, by your opinion, where you found that there cannot be a clear and indisputable right to have an IPR instituted or to have an IPR continue, which is the relief that appellants are asking for. Furthermore, I think it's fair noting that the same parties are currently disputing the validity of the same patent in ongoing district court proceedings. We have a trial scheduled for August, and then also there was an ex parte re-exam that appeared to be a carbon copy of the IPR petition that was terminated that is currently ongoing at the PTO. And so there can be no clear and unmistakable right to have an IPR on a time bar petition in addition to district court proceedings and an ex parte re-exam. And I would also note, Your Honor, that there was nothing procedurally unfair about the timing or the facts that came about in this case. The patent owner, we raised the time bar issue about six months after the institution decision where the petitioners hadn't made any other filing immediately after the GoPro guidance came out from the director. And we asked, as the patent owner, we asked petitioners to agree to stay all deadlines because we thought we had a very strong argument that all petitioners were time barred and to agree to have that be decided. And petitioners refused our request and plowed ahead. But the issue was brief, so it was certainly no surprise. It took about four months for the parties to do the briefing and for it to issue its ruling. And we also asked to postpone the oral argument, if we could please get a ruling on this dispositive issue. And again, petitioners refused and they wanted to plow ahead. And so we don't think that it's quite above board to plow ahead and refuse our request to stay proceedings and then complain about wasting resources or that the board's order came too late when everyone knew that this was being disputed. Mr. Wang, there won't be any estoppel concerns for Sling or Aris in the district court litigation. Is that right? That's exactly correct, Judge Chen. There are no estoppel concerns whatsoever for the district court litigation. I think that they're going to raise and they are raising the same grounds, the same prior art, the same arguments. And nor are there any estoppel provisions to the PTO ex parte re-exam that is also ongoing. There's a re-exam ongoing? Yes. There was a third party ex parte re-exam filed with the PTO and it's currently ongoing. That application was anonymous, but I can represent that the grounds and the prior art and the declaration that was submitted appears to be a carbon copy of the IPR petition at issue, the one that was terminated. And I mentioned those things because I think it goes directly to Judge Stoll's point about mandamus relief and here, where we think that the board got the right outcome, they followed the right procedure, a fair procedure, and they allowed both Aris and Sling to each submit 10-page briefs, supplemental briefs, about the time bar issue, and then decided this issue fairly, where there's no procedural unfairness, no estoppel, as your Honor notes, no substantive unfairness, that there can't be a clear and undisputable right for the relief that they're seeking and to get IPR on top of everything else. Going back briefly to my initial point, if we agree that the board's order was a decision to not institute, then this court's precedents in GTNX and Medtronic and biodelivery directly apply and they confirm that there's no jurisdiction for this appeal. And even some of the language from those cases is directly applicable and very instructive. In GTNX, for example, Judge Taranto wrote that it would be, quote, strained to describe determination orders as anything but a determination whether to institute. Did that case or Medtronic address a question about regulatory time limits on reconsideration of institution? None of them addressed that issue directly, but biodelivery is very instructive because the reconsideration of the institution decision took nearly four years after the institution decision because it followed a final written decision and a remand back from the federal circuit. So I don't think it got into the details of the exact timings, but, I mean, four years, the fact of that. I'm sorry, you said biodelivery, is that right? Are you referring to a different case? I believe it was biodelivery. Okay. And, of course, biodelivery, Medtronic, and GTNX, they repeatedly state the same propositions about how the board has an inherent right to reconsider its decisions. And Medtronic is also instructive. It held that it would be strange to hold that a decision to institute review would not be reviewable, but a reconsideration of that decision would be reviewable, which would be appellant's position. Another point, Your Honor, is that during my friend Mr. Cordell's argument, it occurred to me another even more egregious example that would follow from his rule. If the board wrote an institution and at the very end of it had a typographical error and said instituted or institution denied and meant the other, it would have no discretion to correct that typographical error, and it would have to go forward. And if I could wrap up just by making one point, Your Honors, which is we think that Thrive is directly applicable to the jurisdictional issue here and confirms that there is no jurisdiction to hear this appeal, but the underlying facts of the IPRs between this case and Thrive are in some ways reversed. In Thrive, the IPR, the board incorrectly applied Section 315B and instituted review on an untimely petition. Here, the board initially did the same thing, but to its credit, after a full briefing, it reconsidered that decision and analyzed Section 315B correctly and then terminated the IPR. The appellants here seek to undo the board's decision and force them to apply Section 315B incorrectly. I think your time elapsed, and I think you're going over old ground now. Should we hear from Mr. Foreman? Yes, thank you. May it please the Court, this Court lacks jurisdiction to hear this appeal from a board decision terminating an IPR under the 315B time bar. The point I wanted to focus on was the appellant's argument that final in 314B has some special meaning that precludes reconsideration. Appellants claim that that issue has not been resolved by this Court, but if you look at both the GGNX and Medtronic cases, there's language in there that, in fact, does resolve that issue. In GGNX, the Court said that nothing in the statute or regulations applicable here clearly deprives the Board of the default authority to reconsider its own decisions. That quote appears in Medtronic as well. So, the Court has already squarely addressed the issue. What do you think the word final is doing in 314? What work does it do? I think that it's not clear that it really has a separate meaning in the statute. I would look at this Court's panel decision in CROZO, which appellants quote on page 20 of their opening brief where it says that Section 314 provides that the decision is both non-appealable and final, i.e., not subject to further review. So, I would agree with that statement, that non-appealable and final means not subject to further review. And I think final also captures- Do I understand that the government's position is that while it's not subject to 319 review, it is subject to mandamus review, though the standards for mandamus are extremely high? Correct. We've taken the position in prior cases, and the Mylan case was raised, that this Court has the ability to decide the mandamus issue. I think that it would be incredibly hard in a case like this where no one has a right to an IPR. The institution of IPR is always a discretionary decision. There's no situation in which the director is forced to institute an IPR, which is different than something such as re-exam. So, outside of a constitutional issue, which was the case in Mylan, I think it would be very hard to show that there's a clear and unmistakable right to relief under mandamus. But I think that the final and non-appealable captures collateral challenges. For example, an APA district court case, which is not necessarily an appeal, but would still be precluded under the statute. So, I think however you read final, it can't be read to mean that the institution decision is not subject to any reconsideration, because that would be an extreme position. There are lots of... Can you clarify something for me? I thought I heard Mr. Cardell say that there was, put aside the statute, that there's a regulation that limits the time within which reconsideration of institution may be... Can you clarify that? Sure. There's 37 CFR 42.71d sets time limits on requests for reconsideration as a matter of right. But it does not bar the board from allowing a later request for reconsideration. And I believe the court explained that in its GTNX decision. Okay. So, I don't think that time limit precludes the court's reconsideration here. The court's Tokyo Kikai case, which discusses the general authority of an agency to reconsider its decisions, just says that reconsideration has to happen in quote-unquote a reasonable amount of time after the initial decision. And I think that at any time, if the board is reconsidering its decision prior to issuing a final written decision, that certainly qualifies as a reasonable time. I'm happy to answer any questions, but I don't have anything further. Okay. Thank you, Mr. Foreman. And Mr. Cordell, you have rebuttal time. Thank you, Your Honor. Again, Ruffin Cordell for the Dish and Sling appellate. I'd first like to address Mr. Wang's point that the board's order here was a reconsideration of institution. I don't mean to quibble about the language, but just to be precise, what the board did here was simply terminate the proceeding. They didn't reconsider their institution decision. They terminated the proceeding. And under Arthrex, this court does have jurisdiction to decide whether that termination was correct or incorrect. And so that gets us back to... Just so we're clear, am I misremembering? The Arthrex termination was under 42.73 which is an adverse judgment. This is under the more general 42.72 which doesn't talk about anything like a judgment. It's just proceeding over, and I thought the same, both Medtronic and earlier GTN-X made clear that this kind of 42.72 termination by reconsidering the institution is the same thing as for any kind of reviewability purposes of a non-institution in the first instance. Again, Your Honor, the notion that there is a non-institution available is something we dispute. We think that they made the decision to institute and therefore when they terminated, while not, I agree with you, it's not on all fours with Arthrex. The point is the termination did in fact end the proceeding. And under the APA, we still have the ability to challenge that and would do so because it is outside of not only the regulatory framework that Your Honor identified, but the statute. The statute says three months. It doesn't say May. It doesn't say might. It says it shall, that the decision on institution shall occur within three months of the POPR. The regulation does in fact have two periods, so I probably should have elucidated both. It's either 14 days from a decision to institute or 30 days from a decision not to institute. So these are clearly well thought out time periods. This is 37 CFR 4271. And again, we're the subject of actual rulemaking by the office where people commented and it was adopted and everybody agreed. I heard Mr. Foreman say, well, that's only for reconsideration as a matter of right. But again, within the statutory framework and he cites the Tokyo case and that's the correct one because the Tokyo case tells us that it has to be reasonable. And certainly the statute tells us in the first instance under Chevron Step 1 that when they put a time limit into the statute, it is eminently reasonable. And that three month time limit is something that they were nowhere near. Mr. Foreman suggested that under Tokyo we could wait until the week before the final written decision. Well, there really is no time period beyond the final written decision. So I don't think that's a fair reading of Tokyo. Tokyo tells us that those time limits for reconsideration have to be reasonable. There's no showing here that waiting until just days before the final written decision was in any way reasonable. Mr. Wang talked about the GoPro decision and that when they saw the GoPro decision, they left into action and requested that we immediately concede the IPR. But I'd have a couple of responses. First, the board's own rules in SOP 2 make it clear that POP panels, which is what the GoPro decision came from, a POP panel, only describe prospective rules for the conduct of IPRs. And so there was no reason for us to treat it in any other fashion. And then secondly, of course, the GoPro decision came long after institution and the entirety of the institution phase and the suggestion that somehow that would then retroactively change what would happen at institution is something that simply can't be. With respect to buyer delivery, it is true that there was a period of time between the initial decisions and several appeals and the final determination in buyer delivery. However, I do dispute that in any of these decisions, buyer delivery, GTNX, Medtronic, that this finality issue was confronted. General discussion about it, but at no time was this issue actually squarely raised or dealt with in any of the decisions. Thank you, Mr. Cordell. And to the other counsel, the case is submitted. Thank you, Robert. The court will pause momentarily to set up for the law clerk admission. Hello, good morning. This is Judge Chen. And I believe on schedule this morning is a motion from Judge Toronto. Judge Toronto. Thank you. I move the admission of Elias Kim, who is a member of the bar and is in good standing with the highest court of the District of Columbia. I have knowledge of his credentials and am satisfied that he possesses the necessary qualifications. I know this because Elias worked with me in 2019 through 2020 as a law clerk. In that capacity, he was scholarly, very broadly knowledgeable, resourceful, energetic, diligent, creative, and tactful, and a wonderful colleague to me and his co-clerks to boot. I believe that the bar and its legal institutions will be enhanced by his bright, promising career. I urge you to grant the motion. Very compelling. Judge Stoll, what say you? Boy, I don't know how we could deny that motion. That sounds very convincing. I support the motion. Okay, thank you. So I guess now it all comes down to me. Well, I unfortunately didn't get to know Mr. Kim as well as I would have liked due to the circumstances of this past year's pandemic, but on the strength of Judge Toronto's motion and my knowledge of all of Judge Toronto's prior clerks as being tip-top, I happily also support the motion and the motion is granted. Thank you, Your Honors. I will now administer the oath. Please rise and raise your right hand. Do you solemnly swear or affirm that you will comport yourself as an attorney and counselor of this court uprightly and according to law and that you will support the Constitution of the United States of America? I do. Welcome to the Bar of the United States Court of Appeals for the Federal Circuit. Thank you very much. Congratulations, Elias, and that completes our session for this morning. This court stands in recess or adjourned. The Honorable Court is adjourned from day to day.